DERRICK WATKINS,

        Plaintiff,

v.                                                                                 Case No. 24-CV-884

KEVIN WHEELER,

        Defendant.

## DECISION AND ORDER

        Plaintiff Derrick Watkins, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Watkins was allowed to proceed against defendant Milwaukee County Sheriff's Deputy Kevin Wheeler because he allegedly used excessive force against Watkins. The parties filed cross-motions for summary judgment[1], which are fully briefed and ready for a decision. (ECF Nos. 30, 49.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 15.)

## PRELIMINARY MATTER

        Wheeler argues that Watkins failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to his motion for summary judgment, failing to

---

[1] Wheeler argues that the court should deny Watkins's motion for summary judgment (ECF No. 49) because it was filed after the dispositive motion deadline. (ECF No. 53 at 5-6.) The court gave Watkins a deadline to respond to Wheeler's motion for summary judgment by September 29, 2025. (ECF No. 43.) On September 8, 2025, Watkins filed his motion for summary judgment simultaneously with his timely response, so it is likely he intended the motion to be a part of his response. The court will construe it as such.

dispute his proposed findings of fact. (ECF No. 53 at 7-8.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in the light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Watkins's submissions do not formally conform with the rules, his response contains sufficient facts to allow the court to rule on Wheeler's summary judgment motion. Watkins also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Watkins's submissions where appropriate in deciding Wheeler's motion.

## FACTS

On April 4, 2022, Watkins was slated to be transferred from the Milwaukee County Jail to Dodge Correctional Institution. (ECF No. 32, ¶ 1.) At approximately 8:30 a.m., non-defendants Correctional Officers Rayoung Chan-Viramontes and Kenny Lor came to Watkins's cell to have him pack up and to escort him to the transport van. (*Id.*, ¶¶ 6-9.) Because Watkins was taking his time packing and chatting with other prisoners, at approximately 8:38 a.m. non-defendant Correctional Officer Joseph Haasch came to assist with the escort. (*Id.*, ¶ 10.) Haasch told Watkins several times that it was time to go, but Watkins ignored Haasch. (*Id.*, ¶¶ 13-15.) When Watkins asked if he could bring his large box of legal paperwork, Haasch told him he could not because

the transport agency does not allow large items. (*Id.*, ¶¶ 16-17.) Watkins admits this news upset him. (*Id.*, ¶ 21.)

At 8:40 a.m., Haasch told Chan-Viramontes and Lor that they could resume their other duties and he would escort Watkins to the release area. (ECF No. 32, ¶ 18.) Chan-Viramontes began walking to the door of the pod to leave, and Lor turned his back on Watkins to follow Chan-Viramontes. (*Id.*, ¶ 19.) Watkins then quickly "snaked his right arm around Lor's neck from behind and raised his left hand in a fist as he dragged Lor into Cell 10." (*Id.*, ¶ 20.) Surveillance video of this incident confirms this is what occurred. (ECF No. 44, Exhibit 1000A at 8:40:50.) When Watkins grabbed Lor, Haasch stated he noticed "a small unknown object in Watkins' left fist that was raised between his knuckles." (ECF No. 32, ¶ 22.) Watkins denies he had anything in his hand. (ECF No. 48 at 2.) The video is inconclusive.

The defendant asserts and the video confirms that Haasch immediately grabbed Watkins's right wrist to remove his arm around Lor's neck and grabbed the left wrist to prevent Watkins from using it to hit anyone. (ECF No. 32, ¶ 25; ECF No. 44, Exhibit 1000A at 8:41:00-8:41:40.) Once Haasch had Watkins's arms secured, he "drove Watkins into the wall next to the doorway of Cell 10", causing Watkins to lose his grip on Lor, who was able to break free. (ECF No. 32, ¶ 26.) Haasch and Chan-Viramontes then pinned Watkins to the ground outside of the cell. (*Id.*, ¶ 27.) At that point it is undisputed that Watkins grabbed Chan-Viramontes's taser (*Id.*, ¶ 28; ECF No. 49 at 2.) Watkins asserts he did not mean to grab the taser, but he admits that, once he had a

3

hold of it, he refused to let it go until a Lieutenant arrived. (ECF No. 49 at 2.) At that point, Lor radioed for assistance. (ECF No. 32, ¶ 29.)

At approximately 8:42 a.m., non-defendant Correctional Officer Cyrus Payne responded to Lor's call and repeatedly ordered Watkins to let go of the taser. (ECF No. 32, ¶¶31-38.) When Watkins refused, Payne assisted Haasch and Chan-Viramontes in securing Watkins and removing the taser from his grasp. (*Id.*, ¶ 39.) During this scuffle, Haasch asserts that he "noticed a lot of toilet paper coming off Watkins from underneath his Jail-issued clothing." (*Id.*, ¶ 37.) Watkins does not dispute that he was wearing what he termed "body padding" but states that he has a practice of doing so to protect himself from attacks from other prisoners. (ECF No. 48 at 6.) The defendants assert that the fact that he was wearing "body padding" indicates, in their experience, that the attack and resisting a taser were premediated. (ECF No. 32, ¶¶ 54-54, 124-125.) Watkins was then subdued and restrained. (*Id.*, ¶¶ 41-42.)

Also at approximately 8:42 a.m., defendant Wheeler arrived to assist with the situation. (ECF No. 32, ¶ 43.) Wheeler was informed that Watkins had a weapon which was believed to be a shank in his hand and that he assaulted and attempted to take Lor hostage. (*Id.*, ¶ 44.) Watkins disputes that he had a shank but admits everything else. (ECF No. 49 at 2.) Watkins points out that Wheeler did not attempt to tase him during this incident even though Watkins concedes that it would have been justified. (*Id.*)

Approximately one minute later Lt. Dominique Smith arrived and noticed that Watkins was still resisting efforts to restrain him. (ECF No. 32, ¶¶ 47-49.) Watkins was eventually restrained enough to be brought to his feet but, as the video shows, he

4

attempted to prevent this by "using dead weight tactics." (*Id.*, ¶ 51.; ECF No. 44, Exhibit 1000A at 8:43:30-8:44:10). The video also shows officers restraining Watkins with his arms behind his back and making him walk backwards towards the release area. (*Id.*) Watkins is clearly dragging his feet and not cooperating with the escort. (*Id.*)

Watkins was successfully escorted to the release area at approximately 8:49 a.m. (ECF No. 32, ¶ 64.) As the video shows, Wheeler had his taser drawn and focused on Watkins as they arrived. (ECF No. 44, Exhibit 1000B at 0:52.) It is undisputed that Watkins was not kicking or attempting to lunge at any officer but was making verbal threats and expressing his anger. (ECF No. 32, ¶ 65; ECF No. 48 at 2.) It is also undisputed that officers were instructing Watkins to calm down and that Watkins was struggling to calm down. (ECF No. 32, ¶¶ 66-67.) Watkins also admitted to still being angry at this point. (*Id.*, ¶ 68.)

As they were readying Watkins for transport, non-defendant Correctional Officer Marisol Rodriguez "removed a sock full of batteries, which is commonly made as a weapon by inmates in jail and prison settings, that was hanging from Watkins's pants near his waist." (ECF No. 32, ¶ 70.) At approximately 8:50 a.m., jail staff attempted to put Watkins into transport restraints, but once he was uncuffed Watkins "began to tense up his arms to impede movement, ignore[d] repeated orders from officers to stop tensing up and resisting, and started grunting and yelling." (*Id.*, ¶ 73.) At this point Lt. Smith had Oleoresin Capsicum (OC) spray trained on Watkins in an attempt to gain compliance. (*Id.*, ¶ 75.) Watkins's left hand was uncuffed, and as the video shows Watkins brought his left arm to the front of his body and attempted to resist having his

5

arm restrained "by making 'washing machine' movements—shaking and twisting his body from right to left and shuffling his feet, trying to shake officers off him." (*Id.*, ¶ 76; (ECF No. 44, Exhibit 1000B at 2:49-50.) Watkins continued to struggle in such a manner and admits that he was "expressing his anger to Jail staff verbally", including shouting that he did not care about the OC spray. (ECF No. 32, ¶¶ 80- 81.) Wheeler asserts that, when Watkins shouted about the OC spray, he decided to unholster his taser. (*Id.*, ¶ 82.) Wheeler then, as the video shows, moved "to the rear of Watkins for betting positioning and maximum efficacy of the Taser, should it need deployment." (*Id.*; ECF No. 44, Exhibit 1000B at 2:51.)

Staff attempted to "secure Watkins' hands in the transport restraints but Watkins began to make growling noises" and continued to jerk and pull his body away. (ECF No. 32, ¶ 89.) Wheeler states that Watkins was kicking his feet and making fists in addition to jerking his body. (*Id.*, ¶ 92.) The video is inconclusive on this point, but it is clear that Watkins was still not cooperating with being restrained. ((ECF No. 44, Exhibit 1000B at 2:51-3:09)

Because Watkins was still resisting, at approximately 8:51 a.m. Wheeler verbally indicated he was going to use the taser, and then "deployed one 5-second burst from his Taser." (ECF No. 32, ¶ 96.) It is undisputed and confirmed by the video that, because of the "body padding", the first taser deployment failed to incapacitate Watkins. (*Id.*, ¶ 99; (ECF No. 44, Exhibit 1000B at 3:10-3:18.) Wheeler then immediately deployed a second set of taser prongs because he still considered Watkins a threat. (*Id.*, ¶ 105.) As the video shows, the second deployment incapacitated Watkins and he fell to the ground. (ECF

6

No. 32, ¶ 106; (ECF No. 44, Exhibit 1000B at 3:18-3:20.) Staff kept Watkins on the ground as they awaited medical assistance. (ECF No. 32, ¶ 109.) Non-defendant Registered Nurse Samantha Markwardt attended to Watkins and noticed that he had "lawyers of toilet paper and other miscellaneous paper items between his clothing," (*Id.*, ¶ 123.)

As Watkins was being examined, the staff from the transport agency informed jail staff that they could not transport Watkins until he calmed down and was medically cleared for transport. (ECF No. 127.) A phone call between transportation agency staff demonstrates that they believed Watkins was combative and prone to continue to resist. (ECF No. 44, Exhibit 1005.) Finally, at 9:13 a.m. Watkins was medically cleared and transported to Dodge Correctional Institution by the transportation agency without incident. (ECF No. 32, ¶¶ 131, 135.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant.

7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Watkins claims that Wheeler violated his constitutional rights when he tased him. There is a question regarding whether the Fourteenth Amendment standard for excessive force or the Eighth Amendment standard for excessive force applies. If Watkins was a pretrial detainee, his rights arise out of the Fourteenth Amendment's Due Process Clause; if he was a convicted prisoner, his rights arise out of the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (holding that an objective unreasonableness standard applies to claims brought by pretrial detainees while a subjective standard of whether the force was applied maliciously and sadistically applies to convicted prisoners).

8

Case 2:24-cv-00884-WED    Filed 01/06/26    Page 8 of 13    Document 59

The case was screened as a Fourteenth Amendment excessive force case because Watkins alleged that he was a pretrial detainee at the time he was tased. (ECF No. 11 at 3.) Wheeler argues that the Eighth Amendment standard actually applies as it is undisputed that, on the date of the incident, Watkins was being transported to Dodge Correctional Institution because his supervised release in a prior criminal case had been revoked by the Washington County Circuit Court. (ECF No. 31 at 15.)

Indeed, the Wisconsin Circuit Court Access website confirms that Watkins was sentenced to prison on March 31, 2022, four days before he was tased. *See* https://wcca.wicourts.gov/ Washington County Case No. 2011CF000400. The court notes that Watkins had been incarcerated at the Milwaukee County Jail due to another pending charge. However, even though he faced pending charges, the fact is that on April 4, 2022, Watkins was a convicted prisoner. As such, the Eighth Amendment standard for excessive force applies. *See Kingsley* 576 U.S. at 396-97 (2015); *Spears v. Tyler*, Case No. 20-cv-894-pp, 2022 WL 2953663 at *4 (E.D. Wis. July 26, 2022); *Sain v. Mattson*, Case No. 21-cv-145-bbc, 2022 WL 1063820 (W.D. Wis. April 8, 2022) (applying Eighth Amendment standard where plaintiff's extended supervision had been revoked three days prior to the incident).

Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 Fed. Appx. 378, 382 (7th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "Several factors are relevant in determining whether a defendant applied force in good faith or

9

for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

It is well established that when prison officials are "faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification for use of a taser". *Id.* Where prisoners verbally threaten guards, clench their fists, lunge at guards, shout at guards, or had just prior "engaged in a physical altercation with security officers", courts have held the use of a taser is penologically justified. *Id.* (discussing cases). Courts must give deference to prison officials' decisions regarding institutional security. *McCotterll v. White*, 933 F.3d 651, 664 (7th Cir. 2019.) "Experience shows that excessive force claims often arise where correctional officers are required to act 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Smith v. Kind,* 140 F.4th 359, 366 (7th Cir. 2025) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

Mere minutes went by between Watkins attempting to pull Lor into his cell and Wheeler tazing Watkins. The videos show that, before being tased, Watkins was still resisting efforts to be restrained and escorted to the release area, including dragging his feet, refusing to walk on his own, and twisting and turning to avoid efforts to restrain him for transport. While the videos do not have audio, Watkins admits that he was upset and was verbally expressing his anger at the officers attempting to restrain him. It is also undisputed that Watkins had "body padding" that prevented the first use of the

10

taser from successfully subduing him, and a sock full of batteries was uncovered on his person in the release area. Wheeler also reasonably believed Watkins to be in possession of a shank.

Watkins argues that, while he probably deserved to be tased, by the time Wheeler tased him it was unnecessary. However, Wheeler reasonably believed Watkins was a security threat. Watkins behaved violently and dangerously immediately prior to arriving in the release area. He was shouting and verbally expressing anger. He was physically resisting being restrained. He had at least one weapon on him (the sock full of batteries). The video shows that he started becoming more physically resistant in the release area once the handcuffs were removed, and the other officers had trouble getting Watkins into the transport restraints.

As such, there is no genuine dispute of material fact that Watkins was a security threat, and no reasonable factfinder could conclude that Wheeler deployed the taser maliciously or sadistically. Summary judgment is granted in Wheeler's favor.

## CONCLUSION

For the foregoing reasons, Wheeler's motion for summary judgment is granted. Wheeler also argued that he was entitled to qualified immunity but because the court found in his favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 30) is **GRANTED.**

**IT IS FURTHER ORDERED** that Watkins's motion for summary judgment (ECF No. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 6th day of January, 2026.

                        BY THE COURT

                        *William E. Duffin*
                        WILLIAM E. DUFFIN
                        United States Magistrate Judge